**FILED**

JEANNE A. NAUGHTON, CLERK

**JUN 2 9 2023**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY_____DEPUTY

UNITED STATES BANKRUPTCY
COURT DISTRICT OF NEW JERSEY

In Re
MARLON J. WILDING,

        Debtor.

SEAN AND LAURIE HALAW,

            Appellants-Plaintiffs,

v.

MARLON J. WILDING,

        Defendant.

Case No.:        17-35624 (RG)

CHAPTER        7

Adv. Pro. No.:        18-1154 (RG)

Judge Rosemary Gambardella

## OPINION

**APPEARANCES:**

GUILLERMO GONZALEZ, ESQ.
Scura, Wigfield, Heyer, Stevens & Cammarota, LLP
1599 Hamburg Turnpike

Wayne, NJ 07470
Attorney for Appellants-Plaintiffs,
Sean and Laurie Halaw

EDWARD P. AZAR, ESQ.
Law Offices of Edward P. Azar
2840 Route 23 S.

Newfoundland, NJ 07435
Attorneys for Appellee-Defendant
Marlon J. Wilding, Debtor

**ROSEMARY GAMBARDELLA, UNITED STATES BANKRUPTCY JUDGE**

## Matter Before the Court

Before this Court is a remand by order of the District Court[1] with instructions to this

Bankruptcy Court for: 1) A determination upon application of the factors set forth in *Poulis v.*

*State Farm Fire & Cas. Co.,* 747 F. 2d 863 (3d Cir. 1984) to the Appellants-Plaintiffs' Motion

for Sanctions pursuant to Fed. R. Civ. P. 37; and 2)  As to the Appellee-Defendant's Motion to

Dismiss the Adversary Complaint, consideration of the doctrines of waiver and laches consistent

with the law and facts set forth in the matter.  Pursuant to the Remand Order, this Court entered a

Joint Briefing Scheduling Order on December 9, 2021 establishing a briefing schedule for

consideration of Appellants-Plaintiffs' Motion for Sanctions and for Appellee-Defendant's

Motion to Dismiss the Adversary Complaint.

A hearing was held before this Court on September 8, 2022 to consider the parties' oral

arguments.   This Court reserved decision.  The following constitutes this Court's findings of fact

and conclusions of law.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and

157(b)(2)(A) and (H) and the Standing Order of Reference from the United States District Court

for the District of New Jersey dated July 23, 1984, as amended September 18, 2012, referring all

---

[1] By Order Granting Appeal from the Bankruptcy Court, the United States District Court for the District of New Jersey, *Halaw v. Wilding*, Civil Action No. 2:20-Cv-11803 (BRM) and docketed in *Halaw v. Wilding*, United States Bankruptcy Court for the District of New Jersey, Adversary Proceeding. No. 18-01154 (RG) ("Adversary Proceeding") (ECF 54), the District Court remanded this matter to the Bankruptcy Court ("Remand Order"). In the Remand Order, the District Court granted the Appellants' appeal from the Bankruptcy Court's Order entered on September 29, 2020, in the Adversary Proceeding and vacated the Bankruptcy Court's Order  dismissing the adversary complaint with prejudice and dismissing the Appellants' Motion for Sanctions (ECF 52).

bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of

28 U.S.C. § 157(b)(2)(A) and (H). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

## I.    FACTS AND PROCEDURAL HISTORY [2]

On December 22, 2017, the Debtor filed a voluntary bankruptcy petition seeking relief

under Chapter 7 of the United States Bankruptcy Code.  John Sywilok was appointed as Chapter

7 Trustee.   A meeting of creditors pursuant to 11 U.S.C. § 341(a) (the "Meeting of Creditors")

was scheduled for January 19, 2018 at 11:00 AM.   The notice of the Meeting of Creditors (ECF

3) (the "Ch. 7 Notice") also stated that the deadline to object to discharge or to challenge whether

certain debts were dischargeable was March 20, 2018.

A Certificate of Notice entered by the Court shows that the Ch. 7 Notice was mailed to

the Appellants-Plaintiffs c/o their then attorneys Serafini and Serafini, 269 Hamburg Turnpike,

Wayne, NJ 07470-2131. The Debtor asserts that the Appellants-Plaintiffs did not appear at the

Meeting of Creditors.

A review of the case docket shows that Appellants-Plaintiffs' current law firm, Scura,

Wigfield, Heyer, Stevens & Cammarota, L.L.P., entered a notice of appearance as "*Proposed

Counsel for creditors, Sean Halaw and Laurie Halaw*" on January 31, 2018.   The Appellants-

Plaintiffs also served the Debtor with a Subpoena for Rule 2004 Examination which was dated

February 12, 2018 (the "R. 2004 Subpoena.")  (See Sanctions Motion, Exhibit F). The R. 2004

Subpoena sought production of documents by March 2, 2018 and Debtor's testimony on March 9,

---

[2] A recitation of facts and the procedural background are also contained in *In re Wilding*, 620
B.R. 843 (Bankr. D.N.J. 2020).  The Court presumes familiarity with that decision.

2018. The dates were continued because the Appellants-Plaintiffs assert that the Debtor did not respond. The examination was ultimately held a week later on March 16, 2018 and the Debtor submitted some, but apparently not all, of the requested documents. (See Sanctions Motion, Exhibit H). Neither party has specified which requested documents were produced by the time of the Rule 2004 examination and which documents were not produced. The transcript attached to the Sanctions Motion as Exhibit H contains a list of exhibits.

Appellants-Plaintiffs and their current law firm were actively involved in the Debtor's case for over a month prior to the deadline to file a complaint. The Appellants-Plaintiffs did not move for an extension of time to object to the Debtor's discharge of their debt or of all debts and no such extension was granted.

By way of background, the Appellants-Plaintiffs are creditors of the Defendant by virtue of an assault during a bar fight that occurred on July 25, 2004 involving plaintiff Sean Halaw ("Mr. Halaw"), the Debtor, and Kevin Maher ("Mr. Maher"), who accompanied Debtor to the bar. The Appellants-Plaintiffs assert pecuniary losses and damages caused by the Debtor's willful and malicious injury to Mr. Halaw. The Debtor pled guilty to aggravated assault with a five (5) year probationary term which was completed.

The Debtor alleges that he was a minor participant in the altercation and does not agree that his participation in the altercation caused Mr. Halaw to sustain any serious injuries. The Passaic County New Jersey Prosecutor's Office pursued criminal charges against the Debtor and Mr. Maher indicting both individuals on charges of aggravated assault. The Debtor accepted a plea offer to plead guilty to aggravated assault with a five (5) year probationary term rather than face the possibility of incarceration. Mr. Maher on the other hand, refused to accept the plea offer and was found not guilty of any charges, including a lesser included offense of simple

4

assault, at the conclusion of a jury trial. Appellants-Plaintiffs claim that it was a different co-defendant named Allan Cortiana, Jr. who was found not guilty.  See Reply, p. 4 and Exhibit A.

Mr. Halaw instituted legal proceedings against the Debtor, Mr. Maher, and others in the Superior Court of New Jersey, Law Division, Passaic County, Docket No. PAS-L- 3214-06. Neither Debtor nor Mr. Maher appeared in the civil proceedings and after a proof hearing was conducted, default judgment was entered on August 22, 2008 against both individuals for $200,000.00 plus $10,000.00 *per quod* to Laurie Halaw.

Mr. Maher filed a bankruptcy case before this Court, Case No. 11-12660, and the Appellants-Plaintiffs filed an adversary proceeding (Adv. Proc. 11-1687), asserting that the judgment was not dischargeable. Mr. Maher defaulted in that adversary proceeding and this Court, after conducting a proof hearing, entered an Order on August 7, 2012 finding that the judgment was not dischargeable as to Mr. Maher pursuant to 11 U.S.C. § 523(a)(6).

The instant adversary proceeding was commenced by a complaint filed on March 21, 2018 by the Plaintiff's current law firm, Scura, Wigfield, Heyer, Stevens & Cammarota, L.L.P. An amended complaint (ECF 2) was also filed on March 21, 2018 (the "Complaint.") The Complaint seeks a determination that the debt owed to the Plaintiffs is nondischargeable pursuant to § 523(a)(6) and objecting to the Debtor's discharge under §727 (a)(3), (a)(4) and (a)(7).

The Debtor filed an answer to the Complaint on May 8, 2018 (the "Answer.")  In the Answer, the Debtor includes as his affirmative defenses that the Appellants-Plaintiffs "have failed to file an objection to discharge or an adversary proceeding within the time prescribed by the United States Bankruptcy Code" and the "Plaintiffs' objection and adversary proceeding are time barred." (Answer, p. 3).

The Plaintiff referenced a letter in the Sanctions Motion dated June 11, 2018 (Exhibit G) wherein the Debtor's counsel stated he believed the Appellants-Plaintiffs' Complaint was time barred.

The June 11, 2018 letter from Debtor's counsel to Plaintiff's counsel states the following:

> As you are aware, our office represents Marlon J. Wilding in the above referenced matter. As I advised you, it is our position that your office filed the Adversary Complaint beyond the statutory timeframe and the notification given to my client at the time he commenced his bankruptcy proceeding. Therefore, our position is that your adversary proceeding is time barred.
>
> Furthermore, the case law is quite clear that this is a dischargeable obligation. Despite the fact that the judgment indicates it is an intentional tort, the case law is quite clear that there must be some evidence of an intentional act causing the intentional injury. A simple act of assault and battery is not, in and of itself, an intentional act and therefore, subject to the bar of the discharge.
>
> Further, I have taken the opportunity to review the adversary proceeding filed by prior counsel against Mr. Kevin Maher. It appears that Mr. Maher did not contest the adversary proceeding and default judgment was entered accordingly.
>
> Based upon the above, it does not appear that you will be able to resolve the adversary proceeding without a full hearing.
>
> Further, it is my understanding that the Bankruptcy Court requires that in all adversary proceedings the parties participate in mediation. Please provide me with some recommendations as to whom you propose so that I can review the same accordingly.
>
> Thank you for your cooperation and assistance in this regard.

A Joint Scheduling Order was agreed to by the parties and entered on July 9, 2018, and a Mediation Order was entered on July 18, 2018. Nancy Isaacson was appointed as mediator.

The parties proceeded to mediation and a Mediation Report was filed on December 28, 2018 indicating a settlement was not reached.

Exhibit N attached to the Sanctions Motion filed on January 24, 2022 (ECF 61-11) includes an e-mail exchange in which the Appellants-Plaintiffs' counsel, Guillermo J. Gonzalez, stated the following to Debtor's counsel, Edward P. Azar, on January 3, 2019:

> Ed,
>
> I hope you had a good holiday season. We have not received discovery responses from your client in this matter. I understand that you will be filing a motion to dismiss in this case, but until such time, the parties will need to extend discovery deadlines. Will you consent to a revised joint scheduling order, so I don't have to file a motion? I can draft it up for your signature.

The Debtor's counsel responded later that day as follows:

> Hi I consent to an extension without the motion. I will check my file because I don't recall discovery requests from your office Thanks Happy New Year.

On January 4, 2019, Appellants-Plaintiffs' counsel responded as follows:

> Great, thanks Ed. I'll draft up the JSO. The discovery request was sent with my responses so you may not have caught it. Notwithstanding, see attached.

A new Joint Scheduling Order was entered on January 14, 2019 (the "January 2019 JSO.") The January 2019 JSO, states, in relevant part, that "[a]ll fact discovery is to be completed by April 26, 2019" and "[a]ny motions to compel discovery are to be made so that the Court can rule and the discovery can be obtained before that date. Late filed discovery motions will not constitute cause for an adjournment of the scheduled trial date."

On March 26, 2019, the Appellants-Plaintiffs filed a Motion to Compel and Extend Discovery (Main Case, ECF 19) (the "Motion to Compel.") In the Motion to Compel, the Appellants-Plaintiffs stated that "[p]rior to Defendant's 2004 Examination, Appellants-Plaintiffs' 2004 Exam Subpoena requested numerous documents related to the items listed in Defendant's Petition and schedules" and the "Defendant failed to produce those documents to completion." (Motion to Compel, ¶ ¶ 10-11)

The R. 2004 Subpoena (attached to the Sanctions Motion as Exhibit F) is dated February 12, 2018, and sought, among other things, extensive documents regarding line items in the Debtor's bankruptcy schedules I, J and B to be produced by March 2, 2018 and a 2004 examination was held on March 16, 2018.  In the Motion to Compel, the Appellants-Plaintiffs stated that "the requested discovery demands were needed to complete a deposition of the Defendant and to move forward with trial." (See Motion to Compel, ¶ 18)

Appellants-Plaintiffs state that Defendant served discovery demand for production of documents on July 26, 2018 (Sanctions Motion, p. 6).  Appellants-Plaintiffs further state that in addition to the discovery requests in the R. 2004 Subpoena, Appellants-Plaintiffs served Plaintiffs Interrogatories and a Request for Production of Documents on Defendant or about October 29, 2018. (See Sanctions Motion, p. 6-7).   Thus, both parties served discovery while mediation was ongoing.  The Appellants-Plaintiffs claim they responded to the Debtor's discovery requests but the Debtor did not fully comply.

The Motion to Compel filed on March 26, 2019, was not opposed by the Debtor. The motion was granted, and an Order was entered on April 17, 2019 (the "Compel Order")[3] The Compel Order extended the discovery deadline until July 26, 2019 and required that "the Defendants shall have until June 27, 2019 to produce requested discovery.

After entry of the Compel Order, there appears to be no activity on the case docket until the Debtor filed a Motion to Dismiss the Adversary Proceeding on July 31, 2019 (the "Motion to Dismiss") on the basis that the Complaint was filed after the March 20, 2018 deadline to file a complaint objecting to discharge or dischargeability and was thus time barred.

---

[3] The Compel Order was entered by the Honorable Jerrold N. Poslusny, Jr., who was assigned the case at that time. (ECF 21)

On August 27, 2019, the Appellants-Plaintiffs filed a Motion for Sanctions pursuant to Fed. R. Civ. P. 37(b) (ECF 25) seeking, among other things, an order striking the Debtor's pleadings in whole including affirmative defenses pursuant to Fed. R. Civ. P. 37 (b)(2)(A)(iii) and entering default judgment pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi) (the "Initial Sanctions Motion.").   The Initial Sanctions Motion sought to impose sanctions on the Debtor for failing to produce certain discovery.   The Initial Sanctions Motion was filed two months after the deadline in the Compel Order for the Debtor to produce documents, one month after the extended deadline for discovery ended on July 26, 2019, and nearly a month after the Debtor filed the Motion to Dismiss the Complaint as time barred.

The Certification of Guillermo Gonzalez, Esq. (the "2019 Gonzalez Certification") filed in support of the Initial Sanctions Motion again asserts as to the Rule 2004 Subpoena that the "Defendant failed to produce those documents to completion." (See 2019 Gonzalez Certification, ¶ 11).   There is no further description of the documents that were produced or the documents that remained outstanding.  The 2019 Gonzales Certification also refers to the June 11, 2018 letter, referenced above, in which the Debtor's Counsel stated he believed Appellants-Plaintiffs' Complaint was time barred, but the Debtor "requested discovery and participated in mediation as opposed to seeking to dismiss Plaintiff's complaint" and as such the Plaintiffs incurred substantial expense and legal time. (See Initial Sanctions Motion).   In other words, the Plaintiff has long been aware that the Complaint was alleged to be time barred and the Debtor participated in the proceedings that might result in a mutual resolution despite the affirmative defense that the matter was time barred.

Also in the 2019 Gonzalez Certification, Mr. Gonzalez states that "Appellants-Plaintiffs again served upon Defendant Request for Production of Documents on or about October 29, 2018- more than six months after Plaintiff's 2004 Exam Subpoena." (2019 Gonzalez Certification, ¶15)

However, as Mr. Gonzales recognizes, the parties were in mediation following the Mediation Order

entered in July of 2018.

The Appellants-Plaintiffs also filed an opposition to Debtor's Motion to Dismiss and

Cross-Motion for partial summary judgment (ECF 27) (the "Plaintiff's Cross-Motion.")   The

Plaintiff's Cross-Motion seeks that Plaintiff's debt be declared non-dischargeable pursuant to 11

U.S.C. § 523(a)(6).

Following additional briefing by the parties and a hearing on December 5, 2019, this

Court filed an Opinion dated August 17, 2020 and Order dated September 29, 2020 granting the

Defendant's Motion to Dismiss the Adversary Complaint with prejudice, dismissing Appellants-

Plaintiffs' Cross-Motion for Partial Summary Judgment as moot and denying Appellants-

Plaintiffs' Motion for Sanctions (ECF 44).

The Appellants-Plaintiffs filed a Notice of Appeal on August 27, 2020.

On September 30, 2021, the District Court entered the Remand Order Granting Appeal

from Bankruptcy Court (ECF 52). See (ECF 54) The Remand Order granted the Appellants-

Plaintiffs' appeal and set forth the following in pertinent part:

1. The Appellants' appeal from the Bankruptcy Court's Order entered on September 29, 2020, from Adversary Proceeding Case No. 18-01154-RG, (ECF) No. 52 is hereby granted; and

2. The Bankruptcy Court's Order dismissing the adversary complaint with prejudice and dismissing the Appellants' Motion for Sanction is hereby vacated (BK Adv. Pro. No. 18-01154-RG, Docket No. 52); and

3. The Appellants' Motion for Sanctions pursuant to Federal Rule of Civil Procedure 37 shall be remanded to the Bankruptcy Court for determination upon application of the factors set forth in *Poulis v. State Farm Fire Causality Co.*, 747 F.2d 863 (3d Cir. 1984); and

4. The Appellee's Motion to Dismiss shall be remanded to the Bankruptcy Court for consideration of the doctrines of waiver and laches consistent with the law and facts set forth in this matter; and

5. The Bankruptcy Court shall establish a briefing scheduling for Appellants' Motion for Sanctions, and Appellee's Motion to Dismiss.

On November 22, 2021, the Court held a hearing on the matter and thereafter on December 9, 2021 entered a Joint Briefing Scheduling Order (ECF 59) (the "Scheduling Order.")

The Scheduling Order established the following deadlines:

January 24, 2022 - Appellants-Plaintiffs are directed to file their legal brief and any applicable exhibits in accordance with the Appeal Order.

February 21, 2022 - Defendant is directed to file his opposition and any applicable exhibits to Appellants-Plaintiffs' legal brief in accordance with the Appeal Order.

March 4, 2022 – the Appellants-Plaintiffs are directed to file the reply legal brief and any applicable exhibits to Defendant's opposition.

Thereafter, on January 24, 2022, Appellants-Plaintiffs filed the pending Motion for Sanctions and Extension of Statutory Deadlines (ECF 61) which included a certification of counsel and Exhibits. The Debtor / Defendant did not file any opposition by February 21, 2022.

On April 25, 2022, Edward Azar, Esq., counsel for the Debtor/ Defendant, filed a motion (ECF 64) (the "Motion to be heard") seeking to be heard on all matters related to the Appeal and the Sanctions Motion.[4] Appellants-Plaintiffs' counsel filed a letter brief objecting to the Motion to be heard on May 3, 2022 (ECF 65) (the "Plaintiff's Response.") On May 16, 2022, counsel for Defendant filed a letter to the Court (ECF 66) acknowledging the Plaintiff's Response and stating that he is not seeking to withdraw as attorney for Mr. Wilding.

A status conference was held on June 16, 2022. The Defendant was granted until July 15, 2022 to file an opposition and the Appellants-Plaintiffs were granted until August 15, 2022.  A

---

[4] This Motion appears to have originally been filed in the Bankruptcy Case as (ECF 20) on April 18, 2022.

scheduling order was to be submitted, but apparently was not submitted by either party.   A

hearing on the Remand, including the sanctions motion and the motion to dismiss the Adversary

Proceeding was scheduled and held on September 8, 2022.

## II.  <u>ARGUMENTS ON REMAND</u>

**A.**    **Appellants-Plaintiffs' Sanctions Motion (ECF 61)**

       **The *Poulis* Factors**

Appellants-Plaintiffs argue in the Sanctions Motion that pursuant to Fed. R. Civ. P.  16(f)

the Court may issue an order, including an order authorized by Fed. R. Civ. P. 37 if a party or

such party's attorney does not abide by a scheduling or pre-trial order. (Sanctions Motion, p. 12)

(citing *Transportes Aereos de Angola v. Ronair, Inc.*, 104 F.R.D. 482, 487 (D. Del. 1985)).

Appellants-Plaintiffs assert that after a party obtains an order compelling discovery that is

disobeyed, Fed. R. Civ. P. 37 authorizes various sanctions as follows:

•      Directing that matters embraced in the order or other designated facts be taken

as established for purposes of the action, as the prevailing party claims;

•      Prohibiting the disobedient party from supporting or opposing designated claims

or defenses, or from introducing designated matters in evidence;

•      Striking pleadings in whole or in part;

•      Staying further proceedings until the order is obeyed;

•      Dismissing the actions or proceeding in whole or in part;

•      Rendering a default judgment against the disobedient party; or

•      Treating as contempt of court the failure to obey any order except an order to

submit to a physical or mental examination.

*Sanctions Motion at p. 12 (citing* Fed. R. Civ. P. 37(b)(2)(A) (i-vii)).

Appellants-Plaintiffs argue that in this matter the "Defendant clearly violated this Court's April 17, 2019 Order compelling discovery" and that because the Appellants-Plaintiffs obtained the Compel Order requiring Defendant to produce all overdue discovery by June 26, 2019 they satisfied the first step of Fed. R. Civ. P 37 (citing *Transportes,*104 F.R.D. at 482).    Then, because the Defendant failed to produce all overdue discovery by that date, Appellants-Plaintiffs assert they satisfied the second requirement for sanctions under Fed. R. Civ. P. 37.

Appellants-Plaintiffs assert that "Fed. R. Civ. P. 37 sanctions serve as a deterrent to noncompliance and unfair litigation practices" and "Fed. R. Civ. P. 37 governs the conduct of parties during litigation and has nothing to do with the ultimate merits of a party's claims or defenses."

Appellants-Plaintiffs also assert that the factors set forth in, 747 F.2d at 863 (the "*Poulis* Factors") weighs in favor of Appellants-Plaintiffs and courts have equitable powers "to dismiss actions or enter default judgments for failure to prosecute, contempt of court, or abusive litigation practices." (Sanctions Motion, p. 14) (citing *Lightning Lube, Inc. v. Witco, Corp.,* 4 F.3d 1153, 1179 n. 15 (3d Cir.1993)).

### (i)    Plaintiff asserts the Defendant is sufficiently personally responsible for the repeated failure to comply with court mandated deadlines.

Appellants-Plaintiffs note that the fact that a failure to comply with a court order is due to the fault of a party's counsel rather than the party is not dispositive and "a client cannot always avoid the consequences of the acts or omissions of its counsel." (Sanctions Motion, p. 16) (quoting *Poulis*, 747 F.2d at 868).    Appellants-Plaintiffs refer to a case in which the first *Poulis* factor was satisfied when a plaintiff did not obtain new counsel or otherwise remedy the situation "despite her knowledge of counsel's troubles with compliance with court rules and orders."

(Sanctions Motion, p. 16)(citing *Ennis v. New Jersey Bell Tel.Co.*, 782 F.2d 396, 397 (3d Cir. 1985)).

Appellants-Plaintiffs argue that the Defendant's failure to produce discovery started on March 2, 2018 when the Debtor did not produce documents in response to a R. 2004 subpoena served on the Debtor in the month before the Complaint was filed.   Defendant failed to produce the documents for his March 9, 2018 Rule 2004 examination. Appellants-Plaintiffs then extended the production deadline to March 12, 2018 and rescheduled the Rule 2004 examination, but the Debtor "still failed to produce the documents."

Nevertheless, Appellants-Plaintiffs argue that even without "all requested documents, it became apparent that Defendant overstated expenses, understated income, failed to disclose assets, failed to disclose all of bank accounts, understated value of assets, and found that Defendant made large purchases prior to filing his bankruptcy petition." (Sanctions Motion, p. 17)

Appellants-Plaintiffs state that they again requested the missing and additional documents through their Request for Production of Documents served on October 29, 2018 at which time Appellants-Plaintiffs complied with Defendant's discovery demands served on July 18, 2018. Appellants-Plaintiffs assert that because the Debtor did not comply, Appellants-Plaintiffs were forced to file their Motion to Compel on March 26, 2019.  The Motion to Compel was granted by Order entered on April 17, 2019 and the Debtor was required to produce all requested discovery by June 27, 2019.   Appellants-Plaintiffs allege the Debtor failed to do so despite the Debtor's counsel informing the Appellants-Plaintiffs that the discovery was forthcoming. (Sanctions Motion, p. 17).

Appellants-Plaintiffs argue that "Defendant has never complied with Appellants-Plaintiffs requests that were initially requested on February 12, 2018 and additional requests on

October 28, 2019" and Debtor's "noncompliance has caused Appellants-Plaintiffs to file a motion

to compel and extend discovery and their motion for sanctions at issue here"  and this disregard

for  "the Bankruptcy Court's order and the rules of discovery of the Bankruptcy Court needs to

be placed on the Defendant." (Sanctions Motion, p. 17).

    (ii)    **Appellants-Plaintiffs argue Defendant's non-compliance has resulted in prejudice.**

Appellants-Plaintiffs assert that the Debtor's noncompliance "has resulted in prejudice to

Appellants-Plaintiffs because they were forced to incur substantial time and expense in filing a

motion to compel discovery and obtained an order compelling discovery that Defendant

disregarded."  (Sanctions Motion, p.17).  Appellants-Plaintiffs cite cases in which sanctions were

awarded based on a party's non-compliance, and assert that they suffered the same prejudice as

the parties who successfully brought motions for sanctions.  Specifically, Appellants-Plaintiffs

argue that "Defendant's disregard for his discovery obligations caused delay like in *Poulis* and

*Ennis* and Plaintiff was forced to prepare for trial with substantial discovery missing." (Sanctions

Motion, p. 19).

Further, Appellants-Plaintiffs assert that like in *Poulis* and *Ennis*, the Debtor "failed to

follow the applicable rules of discovery and a court order" forcing Appellants-Plaintiffs to file the

motion to compel.   Appellants-Plaintiffs argue that the *Kartzman v. Affordable Luxury*

*Limousine Serv. (In re Claire Transp., Inc.)*, 2010  WL 3928479 (Bankr. D.N.J. 2010) case

"shows that this Court can and has granted remedies such as those requested by Appellants-

Plaintiffs, such as striking a defendants' answer and affirmative defenses." (Sanctions Motion,

p. 19-20).  Appellants-Plaintiffs further argue that in the cases they cite in which sanctions have

been awarded, the courts did not consider the strength of the moving party's cause of action in

recognizing prejudice and the "substantial delay caused here by Defendant and the substantial

time and expense that Appellants-Plaintiffs incurred in attempting to get Defendant to follow the

discovery rules should be recognized regardless of the choice of whether or not to dismiss

Appellants-Plaintiffs' Adversary Complaint." *Id.*

    (iii)    **Appellants-Plaintiffs argue that the Defendant has displayed a history of dilatoriness**

In support of the third *Poulis* Factor the Appellants-Plaintiffs assert the following:

> the extensive history of Defendant's indifference to discovery obligations does not need repeating to show a history of dilatoriness. The simple fact that there are outstanding discovery obligations still due since before Defendant's 2004 Examination in March of 2018 is enough to show a history of dilatoriness. Despite emails, calls, delinquent discovery letter, courts order compelling discovery and generously extending Defendant's deadline to produce such discovery, it has still not been produced. *See* Exhibits G, K, L, N, O, and P; *see also* Gonzalez Cert., No. 22. This is even after Plaintiff responded to Defendant's discovery demands. *See* Exhibits K &L. Even worse than the situation in *Ennis*, the Defendant has not provided any reason or justification for failing to produce such discovery and even failed to submit written opposition to Appellants-Plaintiffs' original motion for sanctions. Simply stated, a failure to comply with Bankruptcy Court orders cannot go unchecked, Therefore, this factor is easily met (Sanctions Motion, p. 21).

    (iv)    **Appellants-Plaintiffs argue that Defendant's conduct meets the standard for the fourth *Poulis* factor as to whether the actions of the party or the attorney was willful or in bad faith.**

Appellants-Plaintiffs argue that "Defendant's conduct was at least willful and most likely in

bad faith because Defendant ignored a court mandated discovery order."  Citing *Hritz v. Woma*

*Corp.*, 732 F.2d 1178, 1182 (3d Cir. 1984) and *Ennis*, 782 F.2d at 398, Appellants-Plaintiffs argue

that the words "willful" or "bad faith" in describing conduct that satisfies this *Poulis* Factor can

be met by the opposing party's "reckless disregard", "total disregard" or "fearless… indifference"

to communications from the opposing party and directives from the Court.    The Appellants-

Plaintiffs cite *Claire Transport* as an example of sanctions being imposed based on the

defendant's unresponsiveness which was "willful, but just short of bad faith' where the

defendants failed to file answers and displayed a continued pattern of noncompliance throughout the entire adversary proceeding." (Sanctions Motion, p. 22) (citing *In re Claire Transport, Inc.*, 2010 WL 3928479, at *9).

Appellants-Plaintiffs argue that the Debtor has shown this level of willfulness or bad faith noncompliance based on the following:

- After failing to meet his initial deadline of March 2, 2018 to produce the discovery requested in Appellants-Plaintiffs' 2004 Exam subpoena, Defendant ignored Appellants-Plaintiffs' March 7, 2018 emails to compel discovery.

- After extending the deadline and rescheduling the 2004 Examination, Defendant still did not produce the requested discovery and his petition contained overstated expenses, understated income, failure to disclose assets, failure to disclose all of bank accounts, understated value of assets, and Appellants-Plaintiffs' discovered that Defendant made large purchases prior to filing his bankruptcy petition.

- After again requesting the missing and additional documents through Appellants-Plaintiffs' Request for Production of Documents served on October 29, 2018, Defendant failed to timely produce the documents.

- Defendant then ignored Appellants-Plaintiffs' emails and letter written in good faith to resolve the outstanding discovery issues.

- This forced Appellants-Plaintiffs to file their Motion to Compel and Extend Discovery.

- After entry of the order compelling discovery, counsel for Plaintiff called counsel of Defendant to ensure receipt of the order. *See* Cert. of Gonzalez, No. 22. Counsel for Defendant advised that the discovery would be forthcoming, but Plaintiff never received it.

- Defendant then continued their noncompliance despite the Bankruptcy Court's entry of an order compelling discovery.

- Defendant's continued noncompliance is what prompted Appellants-Plaintiffs' Motion for Fed. R. Civ. P. 37 Sanctions.

- Defendant has not produced the requested discovery to this day.

(Sanctions Motion, p.22-23).

Thus, Appellants-Plaintiffs argue that Defendant's behavior is analogous with the conduct in *Ennis* which was described as a "total disregard" and "fearless… indifference" to the party's obligations to the court. (Sanctions Motion p. 23.) Further, Appellants-Plaintiffs argue that Defendant's conduct can also be described as "astonishingly dilatory" as in *Claire Transport* because the amount of time that has elapsed. (Sanctions Motion p. 23.)

    (v)    **Appellants-Plaintiffs argue that the requested relief is merited because alternative sanctions would be ineffective.**

Appellants-Plaintiffs argue that the motion for sanctions "was the only available remedy to Defendant's noncompliance because the Bankruptcy court's scheduling orders, Appellants-Plaintiffs' repeated attempts at communications and motion to compel, and the Bankruptcy Court's Order compelling discovery were all ineffective." Appellants-Plaintiffs assert that similar to *Global Collections Corp. v. Diamond Logistics, Inc.*, 2014 WL 4211244, at *4 (D.N.J. August 25, 2014)*, "alternative sanctions would be futile given the defendant's failure to participate, comply with discovery obligations, and follow court orders when they decided to strike defendant's Answer and enter default." (Sanctions Motion, p. 24)(citing *Global Collections Corp.*, WL 4211244, at *4. Further, Appellants-Plaintiffs argue that lesser sanctions may be ineffective under these circumstances. (Sanctions Motion, p. 24)(citing *Vanz, LLC v. Mattia & Assoc.,* 2017 WL 581344, at *3  (D.N.J. January 25, 2017)).

Appellants-Plaintiffs assert the following sanctions in their proposed order are appropriate:

    a.    Pursuant to Fed. R. Civ. P. 37(b)(2)(i), establishing the fact that the debt at issue in this adversary proceeding stems from pecuniary losses and damages from Defendant's willful and malicious attack on Mr. Halaw in the bar fight described in the Police report, which was the proximate and actual cause of the serious and permanent injuries to Mr. Halaw; and therefore non-dischargeable; and

b.  Prohibiting the Defendant from bringing defenses (including any and all affirmative defenses) or introducing matters into evidence pursuant to Fed. R. Civ. P. 37(b)(2)(ii); and

c.  Striking Defendant's pleadings in whole pursuant to Fed. R. Civ. P. 37(b)(2)(iii); and

d.  Rendering default judgment against the Defendant pursuant to Fed. R. Civ. P. 37(b)(2)(vi); and

e.  Holding Defendant and/or Defendant's Counsel in contempt of court pursuant to Fed. R. Civ. P. 37(b)(2)(vii); and

f.  Ordering the Defendant and/or Defendant's Counsel to pay reasonable expenses, including attorney's fees caused by Defendant's failure to abide by the Order pursuant to Fed. R. Civ. P. 37(b)(2)(C).

(Sanctions Motion, p. 24-25).

Appellants-Plaintiffs assert that their requested sanctions were justified under the circumstances of this case because:

- Appellants-Plaintiffs were forced to go without the requested discovery for the entire duration of this litigation.

- Defendant failed to produce the requested discovery despite the Bankruptcy Court's order requiring him to do so and Appellants-Plaintiffs' compliance with discovery obligations.

- Because of Defendant's noncompliance, Appellants-Plaintiffs incurred substantial costs and expenses through litigation and mediation that has been drawn out for over two years.

(Sanctions Motion, p. 25).

Thus, Appellants-Plaintiffs argue that like in *Claire Transport*, "there are no other available sanctions that would address the prejudice Appellants-Plaintiffs have suffered in litigating this case" and the Debtor "has neglected discovery obligations- which would make alternative sanctions futile such as in *Global Collections* and *Vanz*."  Appellants-Plaintiffs further assert that "alternative sanctions would delay this matter even further which was the concern in *Ennis*." (Sanctions Motion, p. 25).

(vi)    **Appellants-Plaintiffs argue that the meritoriousness of Defendant's defenses are irrelevant because Defendant's non-compliance with the Court Order and his discovery obligations have already caused substantial prejudice to Appellants-Plaintiffs.**

Appellants-Plaintiffs argue that they have already proved that a majority of the *Poulis* factors weigh in their favor and Courts in this jurisdiction have not considered the meritoriousness of a defendant's defenses when other *Poulis* factors are met. (Sanctions Motion, p. 25-26)(citing *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 222 (3rd Cir. 2003); *Vanz,* 2017 WL 581344, at *3).

Although Appellants-Plaintiffs argue the Court does not need to consider Debtor's defenses because Appellants-Plaintiffs meet the other Poulis Factors, Appellants-Plaintiffs assert that if the Court does decide to consider this factor, the Debtor will not be able to defend this action on the merits.   Appellants-Plaintiffs assert that the debt is non-dischargeable under 11 U.S.C. § 523(a)(6) for willful and malicious injury arising from a judgment obtained by Appellants-Plaintiffs against Defendant related to the Debtor's aggravated assault on Plaintiff Sean Halaw during a July 25, 2004 bar fight that resulted in serious injuries to Mr. Halaw. Appellants-Plaintiffs argue that the Honorable Raymond Reddin, J.S.C. entered judgment in favor of Appellants-Plaintiffs and against Defendant on August 22, 2008 which stated that the judgment would be non- dischargeable by the Defendant in bankruptcy.   (Sanctions Motion, p. 27).

**Laches / Waiver**

**Appellants-Plaintiffs Argue that the Debtor should be Estopped from Asserting the Affirmative Defense of Statute of Limitations Due to the Doctrines of Waiver and Laches.**

Appellants-Plaintiffs assert that as to the Motion to Dismiss the Adversary Proceeding, the statutory filing deadlines are subject to equitable defenses such as waiver, estoppel and

equitable tolling  (Sanctions Motion, p. 27) (citing *United States v. Locke,* 471 U.S. 84, 94, 105 S. Ct. 1785, 85 L. Ed. 2d 64, n. 10 (1985)).  Appellants-Plaintiffs also cite *Kontrick v. Ryan*, 540 U.S. 443, 460, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004) for the argument that Fed. R. Bankr. P. 4004 is not "jurisdictional" but rather "a claims processing rule" and a debtor can forfeit the right to rely on the Fed. R. Bankr. P. 4004 deadline if the issue is not timely raised.  (Sanctions Motion, p. 28).

Appellants-Plaintiffs argue that waiver is the "intentional relinquishment of a known right*."* (Sanctions Motion, p. 29) (citing  *In re Ziyambe*, 200 B.R. 790, 799 (Bankr. D.N.J. 1996)) Appellants-Plaintiffs further argue that waiver can be established through conduct or the failure to act evidencing an intent not to claim the right.  (Sanctions Motion, p. 29)(citing  *In re Mangano*, 253 B.R. 339, 344 (Bankr. D.N.J. 2000)).

Appellants-Plaintiffs assert that the concept of laches permits a court to dismiss a case when there is an inexcusable delay that results in prejudice to the other party.  (Sanctions Motion, p. 28) (citing *In re Levy*, 256 B.R. 563, 566 (Bankr. D.N.J. 2000)).   Appellants-Plaintiffs argue that failure to apply waiver or laches under these facts would create a "legal fiction" and "there would be no scenario where these doctrines would apply." *Id.*

As in the Initial Sanctions Motion, Appellants-Plaintiffs compare the current matter to the facts in a New Jersey state court case, *White v. Karlsson,* 354 N.J. Super. 284, 806 A.2d 843 (App. Div. 2002) in which the Appellate Division reversed the entry of summary judgment in favor of the defendant after finding the defendant had waived the statute of limitations defenses by not raising it timely. (Sanctions Motion, p. 29-30).

 Appellants-Plaintiffs argue that federal courts have also determined otherwise meritorious defenses could be waived if not raised timely.  (Sanctions Motion, p. 31) (citing *Rios-*

*Colon v. Toledo-Davila*, 2013 WL 12408527, at *2 (D.P.R. June 18, 2013); *Cringoli v. Guthrie*,

No. 86 CIV. 4971 (CSH), 1990 WL 96766, at *5 (S.D.N.Y. July 3, 1990); *Pennsylvania*

*Lumbermens Mut. Ins. Co. v. Forman's of Orchard St., Inc.*, No. 96 CIV. 0508 (DC), 1998 WL

241963, at *3 (S.D.N.Y. May 14, 1998)).

Appellants-Plaintiffs assert that as in *White*,  354 N.J. Super. 284, the Debtor here waived

his right to assert the statute of limitation defense  because, even though it was asserted in his

Answer, he chose not to seek immediate dismissal and the Debtor actively participated in

litigation causing substantial time and costs to the parties.  Specifically, the Appellants-Plaintiffs

point to:

> (i)      the Debtor's appearance at a pre-litigation 2004 examination;
>
> (ii)     Debtor's seeking discovery from Appellants-Plaintiffs;
>
> (iii)    Appellants-Plaintiffs responding to discovery;
>
> (iv)    Appellants-Plaintiffs requesting discovery;
>
> (v)     the parties participated in mediation;
>
> (vi)    the parties extending discovery deadlines; and
>
> (vii)   Appellants-Plaintiffs filed a motion to compel discovery to which Defendant did not object.

Appellants-Plaintiffs assert that throughout the Debtor's participation in litigation, he

knew that he could have sought dismissal of the adversary proceeding but chose not to exercise

that right until sixteen months into the litigation when he filed the motion to dismiss only

twenty-three days before trial and when this Court questioned Defendant's counsel concerning

the delay, counsel did not provide a reasonable excuse. Further, Appellants-Plaintiffs argue that

unlike in the *White* matter, "where the defense attorney was not aware of the statute of limitations

issue until shortly before trial, it is undisputed that Defendant was aware of the same issue early

in this case."

Appellants-Plaintiffs assert again the following:

- Defendant's participation in sixteen months of litigation with the knowledge that Appellants-Plaintiffs' Adversary Complaint could arguably have been dismissed is more than enough to qualify as waiver.

- Waiver has nothing to do with Plaintiff's actions or inactions prior to filing this Adversary Complaint, instead waiver concerns a parties' actions or inactions after the Adversary Complaint was filed. waiver concerns what happens during the course of litigation.

- The *White* court and federal courts have expressed the public policy goal of waiver which is to ensure that parties assert their rights within a reasonable time.

- Here, Appellants-Plaintiffs and Defendant had been participating in this litigation for over a year and a half at substantial cost and expense to Appellants-Plaintiffs. Defendant should not have been permitted to assert a defense at cost and expense to Appellants-Plaintiffs when Defendant could have easily filed a motion to dismiss at the beginning of the case and has provided no reasonable explanation for the delay.

Appellants-Plaintiffs argue this Court erred in finding that Appellants-Plaintiffs did not

suffer damages as a result of Defendant's sixteen-month delay in filing a motion to dismiss after

costly litigation and resources spent.

Further, Appellants-Plaintiffs assert that "[t]he affirmative defense of laches requires

proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice

to the party asserting the defense." (Sanctions Motion, p. 35) (quoting *In re Korman*, No. 08-10614,

2010 WL 889866, at *2 (Bankr. D.N.J. Mar. 8, 2010) (internal citation omitted)).   Appellants-

Plaintiffs argue that they easily satisfy the elements set forth in *Korman* since the Debtor "slept

on his rights and showed no diligence in seeking dismissal of Appellants-Plaintiffs' Adversary

Complaint."

Appellants-Plaintiffs state that the Debtor's motion to dismiss was filed sixteen months

after the filing of the complaint, and fourteen months after Defendant showed he knew he could have dismissed the adversary proceeding. Appellants-Plaintiffs assert they satisfy the second prong because they assert they incurred substantial time and expense on litigation. Appellants-Plaintiffs were forced to endure the delays caused by Defendant's noncompliance which prompted a Motion to Compel discovery and Motion for Sanctions.

Appellants-Plaintiffs also assert that this Court erred "in finding that Defendant's delay in filing a motion to dismiss did not cause harm to Appellants-Plaintiffs when the parties actively engaged in litigation for sixteen months, expending substantial time and legal expense, and when Defendant knew that Appellants-Plaintiffs' Adversary Complaint could have potentially been dismissed." (Sanctions Motion, p. 35).

Appellants-Plaintiffs also argue that the focus for this Court should not be whether Appellants-Plaintiffs late filing was caused by the Debtor's conduct but rather whether laches or waiver applies to the Debtor's actions, in this case, inaction and delay in exercising his rights after the Complaint was filed and his lack of any reasonable explanation for such delay. Appellants-Plaintiffs assert they did suffer damages because of Defendant's unreasonable delay due to the time and expense incurred.

### B.    Appellee-Defendant's Opposition (ECF 67)

In the Appellee-Defendant's Opposition filed on July 14, 2022, the Debtor again seeks entry of an Order granting dismissal with prejudice of the Adversary Complaint based on the late filing of the Complaint pursuant to Fed. R. Bankr. P. 4004 and 4007. (Opposition, p. 3 ) (citing *Sadek v. Etty  Cymet-Meor  Jai*, 215 Bankr. Lexis 240 (Bankr. D.N.J 2015)).   The Debtor further argues that equitable tolling is inappropriate in this case.

The Debtor's counsel in the Opposition does not specifically address sanctions under

Fed. R. Civ. P. 37 or the *Poulis* Factors except to state, without elaboration, that the actions of

the Debtor are not frivolous and were not conducted in bad faith and there is no basis for an

award of sanctions. (Opposition, p. 4). The Debtor's counsel further asserts that "the

sanction argument is being made by counsel for Mr. and Mrs. Halaw merely as an attempt to

hide their own malpractice." (Opposition, p.4).

The Debtor's counsel also focuses on sanctions under Fed. R. Civ. P. 11(b) and Fed.

Rule. Bankr P. 9011 although sanctions under Fed. R. Civ. P. 11 are not in issue here.   The

Debtor's counsel states that Fed. R. Civ. P. 11 sanctions are not warranted and are not mandatory

but discretionary and should only be imposed under exceptional circumstances where the

claim or motion patently lacks merit or is frivolous. The Debtor looks to *In re J&J Pizza,*

*Inc*., 20-23856 (MBK), 2021 WL 3642311 (Bankr. D.N.J. August 17, 2021) in support of this

argument. (Opposition, p. 4 and Exhibit D).

### C.    Appellants-Plaintiffs' Reply (ECF 70)

Appellants-Plaintiffs repeat their arguments for sanctions in the Reply but also add that

the Debtor's response is not responsive to their Sanctions Motion or the items on remand.

Appellants-Plaintiffs argue that Fed. R. Civ. P. 11(b), which the Debtor references in the

Opposition, and the case cited by the Debtor.  *In re J&J Pizza, Inc.,* 2021 WL 3642311, at *2,  are

wholly inapplicable to the present case "because there has been no claim that Appellants-Plaintiffs'

pleadings or Motion were frivolous."   Rather, Appellants-Plaintiffs argue that the evidence in this

case actually shows the opposite and further "at no point during the underling adversary proceeding

and subsequent appeal to District Court was Fed R. Civ. P. 11 or Fed. R. Bankr. P. 9011 even

argued."  (Reply, p. 8)

In addition, Appellants-Plaintiffs state that the Debtor "has yet to provide any justification or circumstances that show that striking Defendant's Answer or striking Defendant's affirmative defenses is inappropriate." (Reply, p.9) Further, Appellants-Plaintiffs argue that the Debtor's attorney "simultaneously accuses Appellants-Plaintiffs' attorney of malpractice, while purposely avoiding a Court Order and sitting on the rights of his client for sixteen months and accruing further legal expenses to the detriment of all parties." (Reply, p. 9)   Appellants-Plaintiffs ask what the purpose is of the Court or litigation "if there is not a fair exchange of discovery" and the events during the course of litigation must matter or "Fed. R. Civ. P. 37 would create a legal fiction." (Reply, p. 9)   Thus, pursuant to Fed. R. Civ. P. 37, Appellants-Plaintiffs assert sanctions must be ordered and because the Debtor did not address "either the correct Federal Rule or the *Poulis* factors" the Sanctions Motion should be considered unopposed.   (Reply, p. 9)

Next, Appellants-Plaintiffs assert that the Debtor "utterly fails to even address the theories of laches and waiver" which are before this Court on remand.  Instead, Appellants-Plaintiffs argue the Debtor is claiming that the Appellants-Plaintiffs are "attempting to retroactively toll the statute of limitations, failing to recognize the true merits of Appellants-Plaintiffs' arguments."   Appellants-Plaintiffs argue that by not applying the doctrines of waiver or laches to the statute of limitations defense here, "would allow any defendant to claim the defense at any time, wasting the resources of both parties and the Court." (Reply, p. 12)

Lastly, the Appellants-Plaintiffs argue that the Debtor erroneously states "[t]he Court does not have jurisdiction if the case is filed outside the 60-day time limit" (citing Debtor's Opposition at p. 3),  but  "this jurisdictional vs. non-jurisdictional issue is not before the Court on remand" and "this Court has already adjudicated that Fed. R. Bankr. P. 4004 and 4007 are non-jurisdictional, meaning the Court may hear the issue even if it is outside of the statute of limitations." (Reply, p. 12) (citing *Kontrick v. Ryan*, 540 U.S. 443, 457, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004); *Schwartz v. Weinberg (In re Weinberg)*, 197 Fed. Appx. 182, 188 (3d Cir. 2006)).   Appellants-Plaintiffs argue

that "based on the non-jurisdictional status the Third Circuit has given to issues arising from Fed. R. Bankr. P. 4004 and 4007, this Court has explicitly ruled on this issue and found that it does indeed have the ability to hear late filings"   and the "current Motion is not a further appeal for the Defendant to be able to relitigate this issue"  and was " not even an issue presented to the Court following the District Court appeal." (Reply, p.14)

### *September 8, 2022 Hearing on Remand Before Bankruptcy Court*

On September 8, 2022, this Court held a hearing with oral argument on the District Court's remand of the Appellants-Plaintiffs' Motion for Sanctions and the Appellee-Defendant's Motion to Dismiss the Adversary Complaint.   Appearances were made by Mr. Edward, P. Azar, Esq., Counsel for Appellee-Defendant Marlon Wilding  and Guillermo Gonzalez, Counsel for Appellant-Plaintiffs.

### A.  Counsel for Appellants-Plaintiffs Oral Arguments-Mr. Gonzalez  on Motion for Sanctions

In oral argument, Appellants-Plaintiffs' arguments substantially mirrored the arguments that were previously set forth to this Court including in its Motion for Sanctions, (ECF 61).

Appellants-Plaintiffs first assert that there are three issues before the Court: 1) sanctions under Fed. R. Civ. P. 37,  and as to the Motion to Dismiss the Adversary Complaint: 2) the application of waiver; and 3) the application of laches.  Appellant-Plaintiffs principally argue that Fed. R. Civ. P. 37 sanctions serve as a deterrent to noncompliance and unfair litigation practices and Fed. R. Civ. P. 37 governs the conduct of parties during litigation and has nothing to do with the ultimate merits of a party's claims or defenses and that the issue before the Court is based on the actions of the parties after the Adversary Proceeding was filed. In this hearing on remand, Appellants-Plaintiffs urge that the focus should be on the Plaintiffs prosecution of their claims in

the Adversary Proceeding including participation in mediation, enforcement of discovery as well as the Defendant's failure to assert rights during the Adversary Proceeding, failure to comply with any discovery requests and the April 17, 2019 Compel Order entered by Judge Poslusny, and careless litigation tactics.

Appellants-Plaintiffs' further argue that Defendant clearly violated this Court's April 17, 2019 Compel Order that sought to compel discovery and that because the Appellants-Plaintiffs obtained the Compel Order requiring Defendant to produce all overdue discovery by June 26, 2019 they satisfied the first step of Fed. R. Civ. P. 37, then because the Defendant failed to produce any overdue discovery by that date, Appellants-Plaintiffs asserts that they satisfied the second requirement for sanctions under R. 37.

Appellants-Plaintiffs also assert that the factors set forth in *Poulis* weigh in favor of Appellants-Plaintiffs and courts have equitable powers to dismiss actions or enter default judgments for failure to prosecute, contempt of court, or abusive litigation practices

Appellants-Plaintiffs argue that while the Defendant produced some financial documents in connection with the initial Rule 2004 examination including pay stubs and financial records, Defendant has never complied with Appellants-Plaintiffs for some 46 items of discovery related to the Adversary Proceeding and claims raised under 11 U.S.C. §§ 523 and 727 of the Bankruptcy Code.

Appellants-Plaintiffs also assert that the Debtor's noncompliance has resulted in prejudice to Appellants-Plaintiffs because they were forced to incur substantial time and expense in filing a motion to compel discovery. Appellants-Plaintiffs cite to cases in which sanctions were awarded based on a party's non-compliance and assert, that they suffered the same prejudice as the parties who successfully brought motions for sanctions.  Specifically, Appellants-Plaintiffs argue that

Defendant's disregard for his discovery obligations caused delay like in *Poulis* and *Ennis* and

Plaintiff was forced to prepare for trial with substantial discovery missing and incur substantial

legal fees in excess of some $165,000.00 in prosecution of Plaintiffs claims and in order to compel

the Defendant to comply with discovery during the course of this Adversary Proceeding.

Further, Appellants-Plaintiffs assert that like *Poulis,* the Debtor failed to follow the

applicable rules of discovery and a court order forcing Appellants-Plaintiffs to file the motion to

compel.   Appellants-Plaintiffs argue that the caselaw shows that this Court can grant

substantial remedies such as those requested by Appellants-Plaintiffs, including striking a

defendants' answer and affirmative defenses

Appellants-Plaintiffs argue that the Defendant has displayed a history of dilatoriness.

Here, the Appellants-Plaintiffs state that the extensive history of Defendant's indifference to

discovery obligations does not need repeating to show a history of dilatoriness. The simple fact

that there are outstanding discovery obligations still due since before the Defendant's Rule

2004 Examination and the initial deadline of March 2, 2018 is enough to show a history of

dilatoriness. Despite emails, calls, a letter, a court order compelling discovery, and generously

extending Defendant's deadline to produce such discovery, it has still not been produced. This

is even after Plaintiff responded to Defendant's discovery demands. Even worse than the

situation in *Ennis*, the Defendant has not provided any reason or justification for failing to

produce such discovery and even failed to submit written opposition to Appellants-Plaintiffs'

original motion for sanctions.

**Laches / Waiver**

As to the Motion to Dismiss the Adversary Complaint, while Appellants-Plaintiffs

concede  that the Complaint was filed one (1) day after the filing deadline, they argue that the

Debtor should be estopped from asserting their Affirmative Defense of Statute of Limitations due to the doctrines of waiver and laches.  Appellants-Plaintiffs assert that statutory filing deadlines are subject to equitable defenses such as waiver, estoppel, and equitable tolling.

Appellants-Plaintiffs assert as well that the concept of laches permits a court to dismiss a case when there is an inexcusable delay that results in prejudice to the other party.  Appellants-Plaintiffs argue that federal courts have also determined otherwise meritorious defenses could be deemed waived if not raised timely.

Appellants-Plaintiffs assert that like in the *White* case, the Debtor here waived his right to assert the statute of limitation defense because, even though it was asserted in his Answer after the Adversary Complaint was filed, he chose not to seek immediate dismissal of the Adversary Complaint and instead the Debtor actively participated in litigation causing substantial time and costs to the parties.  Specifically, the Appellants-Plaintiffs have pointed to:

- The Debtor's appearance at the pre-litigation 2004 examination;
- Debtor's seeking discovery from Appellants-Plaintiffs;
- Appellants-Plaintiffs responding to discovery;
- Appellants-Plaintiffs requesting discovery;
- The parties participated in mediation;
- The parties extending the discovery deadlines; and
- Appellants-Plaintiffs filed a motion to compel discovery to which Defendant did not object.

Appellants-Plaintiffs assert that throughout the Debtor's participation in litigation, he knew that he could have sought dismissal of the adversary proceeding but chose not to exercise that right until sixteen months into the litigation when he filed the motion to dismiss the Adversary Complaint only twenty-three days (23) before the scheduled trial date and when this Court questioned Defendant's counsel concerning the delay, counsel did not provide a reasonable excuse. Further, Appellants-Plaintiffs argue that unlike in the *White* case, "where the

defense attorney was not aware of the statute of limitations issue until shortly before trial, it is undisputed that Defendant was aware of the same issue early in this case."

Appellants-Plaintiffs also argue that the focus for this Court should not be whether Appellants-Plaintiffs late filing was caused by the Debtor's conduct but rather whether laches or waiver applies to the Debtor's actions, in this case, inaction and delay in exercising his rights after the Adversary Complaint was filed and the Debtor's lack of any reasonable explanation for such delay.  Appellants-Plaintiffs assert they did suffer damages because of Defendant's unreasonable delay due to the time and expense incurred while the Debtor has offered no explanation as to why he did not produce the discovery or comply with the Court's discovery order.

### B.  Appellee-Defendant's Oral Argument – Mr. Azar

In oral argument, Appellee-Defendant asserted that he seeks entry of an Order granting dismissal with prejudice based on the late filing of the Adversary Complaint pursuant to Fed. R. Bankr. P. 4004 and 4007 and that equitable tolling is inappropriate in this case.  Appellee-Defendant's counsel asserts that the facts here are that the Plaintiffs' counsel filed the Adversary Proceeding one (1) day late and that the Motion for Sanctions is a smokescreen to hide that error and to avoid a malpractice claim against counsel.   Counsel for Appellee-Defendant asserts that the Debtor provided over seventeen (17) documents in connection with the Rule 2004 Examination and that Plaintiffs were in possession of sufficient information to allow the Plaintiffs to file their Adversary Proceeding.

As to the application of the *Poulis* factors, laches, and waiver, Counsel for Appellee-Defendant argues that Fed. R. Civ. P. 37 provides for discretionary sanctions and the Court is not bound to impose all sanctions.   Counsel for Appellee-Defendant argues that the

Debtor should not be punished for the Appellant-Plaintiffs' Counsel's failure to file the Adversary Proceeding on time.  Counsel for Appellee-Defendant argues that he and his client did comply with certain discovery requests and that filing the Motion to Dismiss some three-weeks before trial was appropriate and not prejudicial to Plaintiffs and that the Defendant was under no obligation to file the Motion to Dismiss at any specific time.  Counsel also argued that had the Motion to Dismiss the Adversary Proceeding been filed immediately upon the filing of the Adversary Complaint,  the Motion would have been objected to as discovery had not started.  Counsel for Appellee-Defendant argued that the Debtor participated in mediation which was unsuccessful.

### III.    Legal Standards

**A.  Legal Standard for Sanctions pursuant to Fed. R. Civ. P.  37**

Fed. R. Civ. P. 37(b)(2)(A) and (C), made applicable by Fed. R. Bankr. P. 7037, provides in relevant part:

> **(2) *Sanctions Sought in the District Where the Action Is Pending.***
> **(A)** *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
> **(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> **(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> **(iii)** striking pleadings in whole or in part;
> **(iv)** staying further proceedings until the order is obeyed;
> **(v)** dismissing the action or proceeding in whole or in part;
> **(vi)** rendering a default judgment against the disobedient party; or
> **(vii)** treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
>
> …

**(C)** *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

The express language of Fed. R. Civ. P. 37 lists several sanctions which a court may impose for a party's failure to comply with a discovery order. *In re Lands End Leasing, Inc.*, 220 B.R. 226, 229-30 (Bankr. D.N.J. 1998); *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 577 (3d Cir. 2018).

As recognized by the Supreme Court, in *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, the sanction "must be just," and it "must be specifically related to the particular claim which was at issue in order to provide discovery." 456 U.S. 694, 707, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982); see *Lands End Leasing, Inc.*, 220 B.R. at 230 ("If a party fails to obey an order to provide discovery, Fed. R. Civ. P. 37(b)(2) allows the trial court to 'make such orders in regard to the failure that are just.'"). In addition, the sanction "must be specifically related to the claim at issue in the previous order to provide discovery. The court must also make factual findings sufficient to support its decision to impose sanctions. *Access 4 All, Inc. v. ANI Assocs., Inc.*, No. 04-6297 RBK, 2007 WL 178239, at *3 (D.N.J. January 12, 2007) citing *Naviant Mktg Sols., Inc. v. Larry Tucker, Inc.,* 339 F.3d 180, 185 (3d Cir. 2003).

In *Victor International*, the Hon. Morris Stern of United States Bankruptcy Court for the District of New Jersey entered an order striking the pleadings of the defendant in a fraudulent transfer action and entered default judgment in favor of the Trustee in light of the defendant's repeated refusal to submit tax returns to the Trustee. 278 B.R. 67, 76 (Bankr. D.N.J. 2002) *aff'd* 97 F. App'x. 365 (3d Cir. 2004). The *Victor International* Court noted,

The required tax returns would, if produced have in the courts view been probative in evaluating debtor-defendant's transfers. Yet, notwithstanding the

foregoing and the imposition of a protective order, several warnings and monetary sanctions (as well as an offer to reduce monetary sanctions), [defendant] stubbornly refused to comply with courts orders.  The trustee was thus stymied in her discovery efforts and the court has been likewise stymied in bringing this matter to trial.  And, most fundamentally, the court cannot permit its order to be flouted without, however reluctantly imposing this ultimate sanction.

*Id.*    In support of its findings, the *Victor International* Court explored the factors set forth in *Poulis*, 747 F.2d 863, that should be considered when imposing the sanction of dismissal with prejudice or of default judgment.  *Id.* at 76, n 6.  The *Victor International* Court however, concluded that it was not necessary to demonstrate all six factors for an entry of default.  *Id.* at 76, n 6. The six factors include

(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Id.* (citing *Poulis*,747 F.2d 863; see *Curtis T. Bedwell and Sons, Inc. v. Int'l Fid. Ins. Co.*, 843 F.2d 683 (3d Cir. 1988) (Court applied the *Poulis* factors to determine whether Fed. R. Civ. P. 37 sanctions were warranted)).

## IV. <u>ANALYSIS</u>

By Order of the District Court[5] this matter was remanded with instructions to this Court to: 1) make a determination upon application of the factors set forth in *Poulis v. State Farm Fire Cas. Co.,* 747 F. 2d 863 (3d Cir. 1984) to the Appellants-Plaintiff's Motion for Sanctions pursuant to Fed. R. Civ. P. 37; and 2)  as to the Appellee-Defendant's Motion to Dismiss the Adversary Complaint, consideration of the doctrines of waiver and laches consistent with the law and facts set forth in the matter.  Order at p. 2-3

---

[5] *Id.* at footnote 1  (ECF 52).

I.    **Application of the *Poulis* Factors**

The following is an analysis of the *Poulis* factors applied to the circumstances of this case:

*(1) The extent of the Debtor's personal responsibility*

The Debtor has not put forth a reasonable explanation related to his failure to produce the requested discovery. No formal opposition was filed to the original Compel Motion and there is not a justifiable explanation contained in the Opposition to this Sanctions Motion.  The Debtor bears personal responsibility for failing to abide by the order to produce the requested discovery.

*(2) The prejudice to the Appellants-Plaintiffs caused by the failure to meet scheduling orders and respond to discovery*

It remains true that the Debtor did not fully comply with a Bankruptcy Court order by not producing all requested discovery without a justifiable explanation for the delay.

The primary damage or prejudice to Appellants-Plaintiffs appears to be the attorneys' fees and costs incurred after the discovery served on the Debtor on or about October 29, 2018 in connection with the Adversary Complaint was not responded to and Appellants-Plaintiffs' counsel contacted Debtor's counsel after the close of mediation, on or about January 4, 2019 and again on February 8, 2019 requesting the discovery and thereafter on March 26, 2019, filed the Motion to Compel in this Court and subsequently sought compliance with the Compel Order including filing the initial Motion for Sanctions on August 27, 2019.

*(3) A history of dilatoriness*

After the Debtor filed the bankruptcy petition, the Appellant-Plaintiffs issued a R. 2004 Subpoena to the Debtor dated February 12, 2018.  Although the Debtor did not comply at first and the examination was adjourned a week, the Debtor apparently produced at least some documents

and sat for an examination on March 16, 2018.  The Adversary Complaint was filed on March 21, 2018, shortly after the R. 2004 examination.

Rule 2004 has been described as a fishing expedition, but it is not unlimited and once an adversary proceeding is filed, discovery is subject to Fed. R. Bankr. P. 7026–7037 which implement various Federal Rules of Civil Procedure.  *See e.g. In re Blinder, Robinson & Co.,* Inc., 127 B.R. 267, 274-75 (D. Colo. 1991); *In re Valley Forge Plaza Assocs.,* 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (stating that "once an adversary proceeding or a particular contested matter is under way, discovery sought in furtherance of litigation is subject to the F.R. Civ. P. rather than the broader bounds of R 2004.") Courts also frown on the use of R. 2004 to circumvent the confines of discovery under the Federal Rules of Civil Procedure. *In re Valley Forge Plaza Assocs*., 109 B.R.  at 675.

Thus, Appellants-Plaintiffs' continued reference to Debtor's failure to fully comply with the R. 2004 Subpoena as evidence of 16 months of dilatoriness should  be discounted since the R. 2004 Subpoena was no longer controlling after the Adversary Complaint was filed on March 21, 2018.

Prior to entry of the initial joint scheduling order in the Adversary Proceeding, the Debtor's counsel sent a letter to Appellants-Plaintiffs' counsel dated June 11, 2018 informing him he believed the Complaint was time barred but understood parties were required to participate in mediation.  A Joint Scheduling Order was agreed to by the parties and entered on July 9, 2018 and a Mediation Order was entered on July 18, 2018 appointing Nancy Isaacson, Esq., as mediator

Although the Debtor served discovery on Appellants-Plaintiffs in July of 2018 and the Appellants-Plaintiffs served discovery in October of 2018, the Local Rules provide that assignment to mediation stays discovery except for Fed. R. Civ. P. 26 disclosures.  Local Rule 9019-2(g) provides the following:

> **Effect of mediation on discovery.** Unless otherwise ordered by the court, the assignment
> to mediation stays discovery, but does not stay the initial disclosures required under
> Federal Rule 26(a)(1). A party may file a motion requesting that discovery proceed
> during mediation or that Rule 26 disclosures be stayed.

L.B.R. D.N.J. 9019-2(g).

The Mediation Order in this case was entered on July 18, 2018 and the Mediation Report

was filed on December 28, 2018 indicating that a settlement had not been reached.  There was no

motion filed by either party requesting that discovery proceed during mediation.

The Appellants-Plaintiffs served discovery in connection with the Adversary Proceeding

on October 29, 2018.  However, this discovery request should be looked at in the context that the

parties were in mediation at that time and pursuant to local rules, discovery is stayed during

mediation.  It is not appropriate to count the time while mediation was ongoing as part of the

Debtor's history of dilatoriness.

Therefore, a more proper date to consider the conduct of the Debtor is January 4, 2019,

when the Appellants-Plaintiffs' counsel apparently re-sent the discovery requests via email.

The Appellants-Plaintiffs again requested responses by letter on February 8, 2019 and,

after not receiving a response, filed the Motion to Compel on March 26, 2019.   The Motion to

Compel was unopposed and the Motion to Compel was granted.

The Compel Order was entered on April 17, 2019 and gave the Debtor until June 27, 2019 to

comply.   The Compel Order stated that the Debtor had until June 27, 2019 to produce requested

discovery. Based on the Debtor's failure to produce such discovery the initial Motion for Sanctions

was filed on August 27, 2019.   Even considering that the Debtor produced no discovery following

the January 4, 2019 email, the time period of delay in production for  Fed. R. Civ. P. 37 purposes

started in January 2019 after mediation concluded albeit unsuccessfully, not from the initial Rule

2004 Subpoena or the October 29, 2018 discovery request and continued at least through August 27, 2019 when the Initial Motion for Sanctions was filed.

### *(4) Whether the conduct of the party or the attorney was willful or in bad faith*

Appellants-Plaintiffs argue that Defendant's conduct meets the standard for the fourth *Poulis* factor as to whether the actions of the party or the attorney was willful or in bad faith. Appellants-Plaintiffs argue that "Defendant's conduct was at least willful and most likely in bad faith because Defendant ignored a court mandated discovery order."   Citing *Hritz v. Woma Corp.*, 732 F. 2d 1178, 1182 (3d Cir. 1984) and *Ennis*, 782 F. 2d at 398, Appellants-Plaintiffs argue that the words "willful" or "bad faith" are not necessary in describing conduct that satisfies this element, but this *Poulis* Factor can be met by the opposing party's   "reckless disregard", "total disregard" or "fearless… indifference" to communications from the opposing party and directives from the Court.   The Appellants-Plaintiffs cite *Claire Transport* as an example of sanctions being imposed based on the defendant's unresponsiveness which was "'willful, but just short of bad faith' where the defendants failed to file answers and displayed a continued pattern of noncompliance throughout the entire adversary proceeding." (Sanctions Motion, p.  22) (citing *In re Claire Transport, Inc.*, 2010 WL 3928479, at *9).

Appellants-Plaintiffs further argue that Defendant's behavior is analogous with the conduct in *Ennis* which was described as a "total disregard" and "fearless… indifference" to the party's obligations to the court. (Sanctions Motion p. 23.)  Also, Appellants-Plaintiffs contend that Defendant's conduct can also be described as "astonishingly dilatory" as in *Claire Transport* because the amount of time that has elapsed. (Sanctions Motion p. 23.)

Appellants-Plaintiffs' assertion of comparative conduct between the *Claire Transport* defendants and the Defendant in this case is not convincing. The *Claire Transport* facts versus the facts before this Court are clearly distinguishable.  In *Claire Transport*, Judge Winfield found the case to be

"marked by delay" and the *Claire Transport* defendants defaulted by failing to answer the complaint on two separate occasions necessitating two separate motions to set aside the defaults and, numerous adjournments, failure to comply with various discovery deadlines including four discovery scheduling orders. *Claire Transport*, 2010 Bankr. Lexis 3512 at *4-5. The *Claire Transport* defendants' conduct was found to be "willful but not in bad faith." *Id.* at *22.

In the case before this Court, the facts show a Debtor that has been generally engaged in the process and complied with some discovery requests but not all and did not comply with one single Compel Order.  The delay in producing the discovery in that regard from January 2019  through the date of the filing of the Initial Sanctions Motion on August 27, 2019 – a period of some eight (8) months—is not insignificant and even if not evidence of willful conduct or bad faith will be considered by the Court in determining an appropriate sanction.

### *(5) The effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions*

As set forth above, the primary damage to Appellants-Plaintiffs appears to be the attorneys' fees and costs incurred after the discovery requests made to the Debtor on January 4, 2019 after the Mediation concluded. Since the discovery was not responded to, Appellants-Plaintiffs' incurred expenses through their counsel sending emails and letters to Debtor's counsel, drafting, and prosecuting the Motion to Compel, and drafting subsequent requests for compliance with the Compel Order including filing the initial Motion for Sanctions on August 27, 2019.  Under these circumstances, the harsh sanction of striking the Debtor's answer and affirmative defenses, including the Debtor's assertion that the Complaint is time-barred or entering default judgment against the Debtor or the other sanctions set forth in Fed. R. Civ. P. 37(b)(2)(A) are disproportionate.

There are lesser sanctions that may be applied to compensate the Appellants-Plaintiffs for the damages they suffered in seeking discovery. The Debtor shall be ordered to pay the Appellants-Plaintiffs for reasonable attorney's fees and costs incurred by their counsel drafting emails and letters to Debtor's counsel requesting outstanding discovery on and after January 4, 2019, drafting and prosecuting the Motion to Compel, and drafting any subsequent requests for compliance with the Compel Order as well as the preparation and filing of the initial Motion for Sanctions on August 27, 2019.

### (6) The meritoriousness of the claim or defense.

The Debtor's defense that the Appellants-Plaintiffs action is time-barred is a meritorious defense. Although, the Debtor delayed filing the Motion to Dismiss, the defense was made known to the Appellants-Plaintiffs early in the case. Had the Debtor filed the Motion to Dismiss the Adversary Proceeding earlier, the attorneys' fees and costs incurred by the Appellants-Plaintiffs in seeking discovery could have been avoided and for that the Debtor should compensate the Appellants-Plaintiffs. But the delay in filing the Motion to Dismiss the Adversary Proceeding, subject to the analysis of laches and waiver below, does not detract from the Debtor's defense to the Complaint.

Based on consideration of the *Poulis* factors, and pursuant to Fed. R. Civ. P. 37 (b)(2)(C), the Debtor shall be ordered to pay the Appellants-Plaintiffs for reasonable attorney's fees and costs incurred by their counsel drafting emails and letters to Debtor's counsel requesting outstanding discovery on and after January 4, 2019, drafting and prosecuting the Motion to Compel, and drafting any subsequent requests for compliance with the Compel Order as well as the preparation and filing of the initial Motion for Sanctions on August 27, 2019. The Appellants-Plaintiffs' counsel shall file within twenty (20) days of the date of this Opinion, an Affidavit of services

rendered and costs incurred.  Debtor shall be granted fifteen (15) days from service of same to file

any objections to the requests for attorney's fees and costs. This Court shall enter a separate order

fixing such fees and costs.

Accordingly, on Remand, the Motion for Sanctions is GRANTED in part and DENIED in

part as set forth above.

The Court will now address on remand, the Debtor's Motion to Dismiss the Adversary

Complaint.

## II.      A.  Legal Standard for Waiver

As set forth in this Court's opinion in *In re Wilding*, 620 B.R. 843, 864 (Bankr. D.N.J.

2020), the Third Circuit in *Evcco Leasing Corp. v. Ace Trucking Co.*, 828 F.2d 188 (3d Cir.

1987), noted that "[i]t is well settled that waiver may be established by conduct inconsistent with

claiming the waived right or any action or failure to act evincing an intent not to claim the right."

*Id.* (citations omitted). New Jersey courts have held that a waiver occurs when a party dispenses

with the performance of something which he or she has a right to exact or does or forbears to do

something inconsistently with the right or the intention to rely on it. *Id.*

As set forth in *In re Wilding*, 620 B.R. 843, 864 (Bankr. D.N.J. 2020), the Appellants-

Plaintiffs in this matter rely on the New Jersey Appellate Division case, *White*, which arose out of

a two-car automobile accident. In *White,* a week before trial, defendant's attorney served

Appellants-Plaintiffs' attorney with a motion for summary judgment asserting that Appellants-

Plaintiffs' claims were barred by the statute of limitations. Appellants-Plaintiffs' attorney admitted

the complaint was filed twenty-nine days late but argued that the Defendant's statute of limitations

defense had been waived. While the trial court granted the motion for summary judgment, the

appellate court reversed and held in part, that the Appellants-Plaintiffs participated in discovery,

and participated in an arbitration in which the only real issues were the extent of their injuries and the amount of compensation. Neither they nor their attorney had any reason to believe defendant was relying on the limitations defense. On receipt of the application for a trial de novo, they were entitled to assume that the merits of their action would be tried, a point fortified by defendant's subsequent answer to interrogatory twelve (12), her attorney's motion to extend the time for discovery, and his failure to pose any questions at (Plaintiff's) deposition relevant to a limitations defense. 354 N.J. Super at 291, 806 A.2d 843.

Like in the Initial Sanctions Motion, the Appellants-Plaintiffs are asserting that the Defendant waived his right to assert this statute of limitation defense because (1) the Defendant attended a prelitigation 2004 examination; (2) Defendant requested discovery from Plaintiff; (3) Plaintiff responded to discovery; (4) Plaintiff requested discovery: (5) the parties participated in mediation; (6) the parties sought from the Court an extension of the discovery deadline and trial date; and (7) Plaintiff's filed a motion to compel discovery without objection.

However, the *White* case continues not to be persuasive. It is significant that the Appellants-Plaintiffs were aware of the Debtor's assertion of a total defense to the Complaint by at least June 11, 2018 when his counsel sent their counsel a letter asserting that he believed that the Complaint was time barred.  The defense was also raised earlier in the Debtor's Answer filed in May of 2018.  Thus, Appellants-Plaintiffs were aware of this defense going into mediation.

Here, the Appellants-Plaintiffs ask this Court in analyzing the doctrine of waiver to consider the conduct of the Debtor after the Adversary Complaint was filed. The Appellants-Plaintiffs understood the risk that the Debtor would raise the defense as a complete defense to the Complaint.  The Debtor did not file the Motion to Dismiss until about seven (7)  months after the end of mediation.  But under these circumstances, when the Appellants-Plaintiffs were well aware

of the defense (including when they went into and came out of mediation) the Debtor's delay

should not be deemed a waiver of a defense he clearly articulated in Debtor's Answer and in

Debtor's counsel's June 11, 2018 letter.  At no time did the Debtor waive his affirmative defenses

to the Adversary Complaint.

### B. *Legal Standard for Laches*

As set forth in *In re Wilding*, 620 B.R. 843 (Bankr. D.NJ 2020), "Laches is an equitable

defense which allows a court to dismiss an action when there exists inexcusable delay in instituting

an action and prejudice to the non-moving party as a result of the delay." *In re Levy* (Stripp, J.),

256 B.R. 563, 566 (Bankr. D.N.J. 2000) (citations omitted). The United States Supreme Court has

held that the doctrine of "[l]aches requires proof of (1) lack of diligence by the party against whom

the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. U.S.,* 365

U.S. 265, 282, 81 S. Ct. 534, 5 L. Ed.2d 551 (1961) (citations omitted). The Third Circuit has

explained that "[t]he doctrine of laches consists of two essential elements: (1) inexcusable delay

in instituting suit; and (2) prejudice resulting to the defendant from such delay." *Cent. Pa.*

*Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1108 (3d Cir. 1996) (citing

*Univ. of Pittsburgh v. Champion Prods., Inc.*, 686 F.2d 1040, 1044 (3d Cir. 1982), *cert. denied*,

459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982)).

This Court has noted that "[a]s a safeguard against bankruptcy cases existing in

perpetuity, the doctrine of laches for instance operates as a bar against reopening a case." *Figlio*

*v. Am. Mgmt. Servs., Inc. (In re Figlio)* (Gindin, J.), 193 B.R. 420, 425 (Bankr. D.N.J. 1996)

(citing *White v. Boston*, 104 B.R. 951, 957 (S.D. Ind. 1989) (laches is defense to motion to

reopen)). *But see Staffer v. Predovich*, 306 F.3d 967, 972 (9th Cir. 2002) (recognizing that "the

question of whether [a debtor] could successfully assert the affirmative defense of laches to [a

creditor's] nondischargeability action was an extraneous issue at the motion-to-reopen stage, and

was not properly addressed prior to the filing [of] the complaint."). We have noted that "all

courts require a particularized showing of prejudice to support a laches defense." *In re Korman*

(Ferguson, J.), 2010 WL 889866 at *3 (Bankr. D.N.J. March 8, 2010). The burden of proving the

applicability of laches to a particular matter rests with the party asserting it as a defense. *In re*

*Winburn*, 196 B.R. 894, 897 (Bankr. N.D. Fla. 1996).

Under New Jersey law, "[t]he doctrine of laches 'is invoked to deny a party enforcement

of a known right when the party engages in an inexcusable and unexplained delay in exercising

that right to the prejudice of the other party," *U.S. ex rel. U.S. Dept. of Agriculture v. Scurry*, 193

N.J. 492, 503, 940 A.2d 1164 (2008) *866 (quoting *Knorr v. Smeal*, 178 N.J. 169, 180-81, 836

A.2d 794 (2003)) and "'The policy behind laches is to discourage stale claims [and] the time

constraints imposed are flexible under the doctrine.'" *Scurry*, 193 N.J. at 503, 940 A.2d 1164

(quoting *County of Morris v. Fauver*, 153 N.J. 80, 105, 707 A.2d 958 (1998) (internal citations

omitted)). *See also Chance v. McCann*, 405 N.J. Super. 547, 549, 567-568, 966 A.2d 29 (N.J.

Sup. Ct. App. Div. 2009).

 "Laches may only be enforced when the delaying party had sufficient opportunity to

assert the right in the proper forum and the prejudiced party acted in good faith believing that the

right had been abandoned." *Scurry*, 193 N.J. at 503-04, 940 A.2d 1164 (citing *Knorr*, *supra*, 178

N.J. at 181, 836 A.2d 794). "The key factors to be considered in deciding whether to apply the

doctrine are the length of the delay, the reasons for the delay, and the changing conditions of

either or both parties during the delay.... In the final analysis, '[t]he core equitable concern in

applying laches is whether a party has been harmed by the delay.' " *Id.*

Here, the Appellants-Plaintiffs are asserting that the defense of laches applies to the present circumstances because the Debtor could have filed the motion to dismiss when the Debtor knew the statutory deadline had passed instead of actively participating in the adversary proceeding which caused the Appellants-Plaintiffs to incur additional costs. The Court considers the length of the delay, the reasons for the delay, and the changing conditions of either or both parties during the delay. The core equitable concern in applying laches is whether a party has been harmed by the delay. The Court is not convinced that the Appellants-Plaintiffs have met their burden of proving that the length of time the Debtor waited after the Adversary Complaint was filed to file a motion to dismiss has caused them such harm that the Debtor's defenses to the Complaint should be precluded.  However, and as set forth above, the Appellants-Plaintiffs should be compensated for the additional cost and expense that they incurred in the discovery dispute.

While the Debtor did not file the Motion to Dismiss the Adversary Complaint early in the proceedings, the Debtor made the Appellants-Plaintiffs aware of the defense early in the case and prior to the parties entering mediation.  Unfortunately for all involved, the matter did not settle. But there is no evidence that the Debtor intended to waive his defenses.   The Debtor could have filed a motion to dismiss instead of an Answer in May of 2018 but having not done so, on these facts, he did not lose his right to raise the argument prior to trial.  The doctrines of waiver and laches do not apply under these circumstances.   The Motion to Dismiss was filed in time to be heard prior to the trial date.   The Initial Sanctions Motion which was filed a few weeks prior to the trial date appears to have been filed in response to the Motion to Dismiss.  It was filed approximately a month after the close of discovery and nearly two months after the Debtor's discovery was due.

45

Further, as set forth above, the sanction under Fed. R. Civ. P. 37 of striking the Debtor's affirmative defenses or treating the Complaint as unopposed and entering a default judgment are disproportionate under these circumstances. This is especially so since the discovery clock should have started after mediation ended and when Appellants-Plaintiffs made the discovery requests on or about January 4, 2019. The Debtor did not comply with the discovery requests. This conduct caused the Appellants-Plaintiffs to incur additional expenses for which they should be reasonably compensated. Thus, the Debtor should pay Appellants-Plaintiffs for their attorney's fees and costs in pursuing discovery. Appellants-Plaintiffs are entitled to Fed. R. Civ. P. 37 sanctions in the form of their attorney's fees and costs in litigating the discovery issue in light of Debtor's non-compliance as set forth in this opinion above. On notice to the Debtor and Debtor's Counsel, the Appellants-Plaintiffs shall within twenty days (20) of the date of this Opinion submit an affidavit of attorneys' services rendered and costs incurred along with a proposed order fixing attorney's fees and costs. Debtor shall be granted fifteen (15) days from service of same to file any objection to the requested attorney's fees and costs. The Court shall enter a separate order fixing such fees and costs.

As to the Motion to Dismiss the Adversary Complaint, the Court here incorporates by reference the findings of fact and conclusions of law set forth in its decision in *In re Wilding*, 620 B.R. 843 (Bankr. D. N.J. 2020). As set forth therein, in relevant part:

> There are two prongs that must be met to satisfy Rule 4004(b) and Rule 4007(c) before an extension of time may be granted: (1) the motion must be filed before the time has expired; and (2) there must be "cause" for an extension. *See In re Boltz-Rubinstein*, 454 B.R. 614, 619 [*863] (Bankr. E.D. Pa. 2011). Bankruptcy courts maintain "limited discretion . . . to permit filing beyond the bar date." *Dollinger v. Proskanzer (In re Poskanzer)*, 146 B.R. 125, 127 (D.N.J. 1992); *see In re Biederman*, 165 B.R. at 788 ("a court has limited discretion to extend the deadlines for filing complaints objecting to the debtor's discharge, or the dischargeability of a creditor's claim and has no discretion for

doing so if the request [**42] for extension is made after the deadline has expired") (citing *In re Poskanzer*, 146 B.R. at 127; *In re Klein*, 64 B.R. 372, 375-76 (Bankr. E.D.N.Y. 1986); *Bradco Supply Corp. v. Lane (In re Lane)*, 37 B.R. 410, 414 (Bankr. E.D. Va. 1984)).

The court in *In re Poskanzer* found that "section 523(a)(3)(B) of the Code tempers the discretion permitted under the Bankruptcy Rules by limiting late filing only to those creditors who lack notice or actual knowledge of the case to permit timely filing." 146 B.R. at 127-28. Further, it held a "plain-reading of the Code and the Bankruptcy Rules suggest that a creditor's possession of actual knowledge of the case vitiates an inadequately noticed creditor's ability to file out of time." *Id.* at 128.

The court in *In re Pendergrass* did not allow for the extension of a deadline when the motion was filed one day late. *Dalembert v. Pendergrass (In re Pendergrass)*, 376 B.R. 473, 476 (Bankr. E.D. Pa. 2007). In that case, the moving party filed an objection to discharge on July 10, 2007, but the last day to object was July 9, 2007. 376 B.R. at 475. The court held "the language of Rule 4007(c) is clear: a complaint 'shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a).'" *In re Pendergrass*, 376 B.R. at 476; *See* Fed. R. Bankr. P. 4007(c). "Moreover, a court's ability to extend this deadline is strictly confined by the plain language of the Rule to instances where a motion to extend is 'filed before the time has expired.'" *In re Pendergrass*, 376 B.R. at 476. Accordingly, the court denied the moving party's request for extension of time. [**43] *Id.*

Filing a Motion Objecting to Debtor's Discharge one day past the filing deadline renders the motion untimely and therefore it must be dismissed. *Id.* According to the court in *In Re Pendergrass*:

If 1-day late filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline; yet regardless of where the cutoff line is set, some individuals will always fall just on the other side of it. Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced.... A filing deadline cannot be complied with, substantially or otherwise, by filing late-even by one day.

*Id.* at 478.

There are times when strict deadline limitations can be softened on equitable grounds, however. The Supreme Court has stated that "[s]tatutory filing deadlines are generally subject to the defenses of waiver, estoppel, and equitable tolling." *United States v. Locke*, 471 U.S. 84, 94 n.10, 105 S. Ct.

1785, 85 L. Ed. 2d 64 (1985). Some courts have held that "these three equitable doctrines could save a late filing from the harsh effect [**44]  of Rule 4007(c)." *In re Pendergrass*, 376 B.R. at 479; see, e.g., *Nardei v. Maughan (In re Maughan)*, 340 F.3d 337, 344 (6th Cir. 2003); *DeAngelis v.* [*864]  *Rychalsky (In re Rychalsky)*, 318 B.R. 61, 64 (Bankr. Del. 2004).

Here, the Plaintiffs did not seek an extension of time prior to the expiration of the 60-day deadline, and instead filed the Adversary Complaint one day after the deadline, on March 21, 2018. As a result of the late filing, the Plaintiffs are asserting defenses of waiver, laches, unclean hands, equitable tolling, equitable estoppel and seeking sanctions under Fed. R. Civ. P. 37(b)(2).1

*Halaw v. Wilding (In re Wilding)*, 620 B.R. 843, 862-64 (Bankr. D.N.J. 2020)

Here, on remand, this Court finds that the Plaintiffs' defenses of waiver and laches have not been sustained.  As a result, for the reasons set forth above, the Adversary Proceeding will be dismissed with prejudice as time barred.

An Order shall be submitted in accordance with this Opinion.

Dated  June 29, 2023                              *Rosemary Gambardella*

                                                 ROSEMARY GAMBARDELLA
                                                 United States Bankruptcy Judge